# Treharne *v.* Matson.

[No. 6,769.  Filed January 12, 1911.]

1. REPLEVIN.—*Evidence.*—*Records of Foreign Justices of the Peace.* —*Amendments.*—In an action in replevin, where defendant claimed title by virtue of a judgment of a justice of the peace of another state, amendments to the notice and constable's return in the action before the justice are admissible in evidence provided the judgment was not void.  p. 711.

2. JUDGMENT.—*Foreign.*—*Conclusiveness of.*—Judgments rendered by courts of other states are conclusive until vacated or set aside, where such courts have jurisdiction of the persons and of the subject-matter.  p. 711.

3. JUDGMENT.—*Justice of the Peace.*—*Defense.*—*Burden of Proof.* —Where a defendant relies, for his defense, upon a judgment of a justice of the peace of a sister state, he must plead and prove the facts necessary to show jurisdiction.  p. 712.

4. JUSTICES OF THE PEACE.—*Jurisdiction.*—*Illinois.*—Illinois justices of the peace have jurisdiction in cases of implied contract, and in attachment, where the amount demanded does not exceed $200.  p. 712.

5. JUSTICES OF THE PEACE.—*Notice.*—*Amendments.*—In Illinois, justices of the peace have power to publish and post notices, amend defective returns and records of the court, and to restore lost records, and such amended or restored records have the same effect as if originally made as corrected or restored.  pp. 712, 716.

6. JUDGMENT.—*Elements.*—*Publication Notice.*—An Illinois statute giving to courts, including those of justices of the peace, power to amend or restore the "record of any judgment," gives the right to amend or restore the publication notice.  p. 715.

7. REPLEVIN.—*Judgment.*—*Recitals.*—*Collateral Attack.*—An action of replevin in this State to recover property sold by virtue of a judgment of a justice of the peace in Illinois constitutes a collateral attack upon such judgment, and the recitals in such judgment are conclusive upon the parties thereto.  p. 717.

8. TRIAL.—*Admission of Evidence.*—*Harmless Error.*—The admission of a letter, in a replevin case, tending to show that an Illinois justice of the peace had jurisdiction over the parties in a case before him, is harmless, where the record showed such jurisdiction.  p. 718.

9. REPLEVIN.—*Right of Possession.*—Right of possession will sustain an action in replevin.  p. 718.

From Steuben Circuit Court; *Emmet A. Bratton,* Judge

Action by Anna Treharne against Lewis I. Matson.   From a judgment for defendant, plaintiff appeals.   *Affirmed.*

*Alphonso C. Wood,* for appellant.

*A. P. Clark Matson* and *Robert W. McBride,* for appellee.

FELT, J.—This is an appeal from the Steuben Circuit Court in an action of replevin, brought by appellant against appellee for possession of a piano and stool and for damages for the unalwful detention of the property.

The complaint is in one paragraph, which was answered by a general denial.

The record also shows that the parties to the action entered into an agreement that under the general denial all defenses might be proved to the same extent and for all purposes as if specially pleaded, and that appellant might prove any facts that would be admissible under a reply to a special answer.

The cause was tried by the court without a jury, the finding was for appellee, and judgment was rendered that appellant take nothing by her action.

The appellant filed a motion for a new trial, which was overruled, and the action of the court in overruling this motion is the error relied on for a reversal of the judgment.

A new trial was asked on the grounds that the decision was contrary to law and was not sustained by the evidence, and that the court erred in admitting in evidence, over the objection of appellant, certain statutes and decisions of the supreme and appellate courts of the State of Illinois, and the transcript of the docket entries, proceedings, judgment, papers and files in the case of Illinois College Hospital v. Daniel J. A. Treharne and Mrs. Treharne, before George H. Woods, a justice of the peace in and for the town of North Chicago, Cook county, Illinois, and also in admitting a certain letter written from New York by the husband of appellant to J. B. Belford, at Chicago, Illinois, who was shown to have a business connection with the garnishee defendant in said suit.

It appears that appellant in 1903 resided in the city of Chicago, Illinois, and that in 1893 she had received from her mother as a gift the piano and stool in controversy; that previous to October 30, 1903, she, in company with her husband, Daniel J. A. Treharne, left the city of Chicago with the intention of going to Wales, and did not return to Chicago until December, 1904; that in August, 1903, before leaving Chicago, they stored their household goods, including said piano and stool, with the Chicago and West Suburban Express Company, in the city of Chicago; that on October 30, 1903, the Illinois College Hospital commenced proceedings in attachment against appellant and her husband, on a demand for the sum of $49, before George H. Woods, a justice of the peace for the town of North Chicago, Cook county, Illinois, and in this proceeding said piano and stool were attached, and the storage company was summoned to appear to the attachment proceeding as garnishee defendant.

The record does not show that any summons was issued or served on appellant. She offered in evidence the transcript of the record of Justice George H. Woods in said attachment suit, together with a certified copy of attachment notice and the writ of attachment certified to by the justice on January 9, 1905, which notice, so admitted in evidence, shows the issuance of a writ of attachment in said suit against appellant and her husband, directed to any constable of said county; that the cause had been continued for trial until December 11, 1904, at 1 o'clock p. m., and said defendants were required by the notice to appear at the office of the justice of the peace, No. 125 Clark street, in the town of South Chicago, Cook county, Illinois, which notice appeared to be signed by the justice on November 26, 1904.

The transcript further shows the publication of this notice by posting in three public places, according to the provisions of the Illinois statutes, "and by mailing a copy of said notice at Chicago, Illinois, addressed to the within-named defendant, at New South Wales, Australia, being the place of resi-

dence stated in the affidavit for attachment herein,'' which proof was signed by A. M. Chase, constable of said court, and bore date of November 26, 1904.

The writ of attachment also shows the residence of appellant and her husband to be ''New South Wales, Australia.'' Said writ directed the constable to attach so much of the personal estate of said Daniel J. A. Treharne and Mrs. Treharne as might be found in Cook county, sufficient to satisfy the debt and costs of plaintiff in that action, ånd also directed the constable to summon said Treharnes to appear before said justice in his office at the town of North Chicago, in said county and state, on November 26, 1903, at the hour of 1 o'clock p. m., and to summon, as garnishee, all persons whom the plaintiff or its agents might direct to appear before said justice.

This writ of attachment bore date of October 30, 1903, and was signed by said justice.

The constable's return shows that he executed the writ by summoning, as garnishee defendant, the Chicago and West Suburban Express Company, and the return thereof bore date of November 5, 1903. The return also shows the levy of the writ of attachment upon the piano and stool, and other personal property of appellant and her husband.

The record of the justice, offered by appellant, further shows that on October 30, 1903, the affidavit and bond of appellant were filed before the justice; that on November 26, 1903, at 2 o'clock p. m., the cause was called, and continued until December 11, 1903, at 1 o'clock p. m., for publication of notice issued to constable, A. M. Chase, which notice, returned by him, shows the posting of three notices at the office of three several justices of the peace at No. 27 North Clark street, Chicago. Illinois, and the mailing of notices as aforesaid. This transcript also shows that on December 11, 1903, before said justice in his court room at 27 North Clark street, Chicago, at 1 o'clock p. m., the case was called, and that ''defendant defaults.'' The record

shows the swearing of one witness, a finding for plaintiff in the sum of $49, and an answer of the garnishee, showing possession of household goods belonging to defendants, which were, by the judgment, ordered to be turned over to the constable, A. M. Chase, to be sold to satisfy the judgment and costs. The constable's return under date of January 23, 1904, shows the sale of the property, the proceeds amounting to $102.40. The record further shows the sale of this property to A. P. Clark Matson, a member of the firm of Cameron & Matson, attorneys for the Illinois College Hospital, and that thereafter said Matson claimed to sell the goods to his father (appellee), and they were shipped to him at Pleasant Lake, Steuben county, Indiana.

This action was commenced in the Steuben Circuit Court on June 22, 1905, after a demand upon appellee for possession of the piano and stool. Appellee gave a delivery bond and retained possession of the property. On August 6, 1906, after appellant had commenced her action, A. M. Chase, constable in the court of said justice of the peace in Chicago, served notice upon appellant that he would, August 7, 1906, before George H. Woods, justice of the peace, ask leave to amend his return upon said attachment notice as follows: "By inserting after the words 'by mailing' the word 'separately,' and by inserting after the words 'addressed to' the words 'each of', and by adding the letter 's' to the word 'defendant.' "

On October 20, 1906, on order of said justice, personal notice was served on appellant and also given by posting, as in the original attachment proceeding, and for the same time, of an application by A. P. Clark Matson, asking said justice of the peace to make an order in the case of Illinois College Hospital v. Treharne & Treharne, reciting what was the substance and effect of said notice and attachment issued by said justice of the peace in said cause of action on November 26, 1903. It was alleged in the application that the original attachment notice issued in said cause, and the return thereon

by the constable, had been lost. On November 16, 1906, notice was served on appellant, that upon November 17, 1906, a motion would be made before George H. Woods, justice of the peace, on behalf of A. M. Chase, constable, to amend his return on the attachment notice issued to him by said justice in said cause on November 26, 1903. The motion was granted, amendment made and return filed. Appellant did not appear before the justice of the peace at the time set for hearing of these various motions and applications, and they were heard in her absence. On November 5, 1906, pursuant to the notice, said justice of the peace, by his amended record, showed that witnesses were sworn and examined, and evidence introduced, from which he found that defendants (one of whom is appellant) have had due notice of said application and of the time set for hearing, in accordance with the statutes in such cases made and provided; that the statements in said application are true as therein set forth; that said A. P. Clark Matson is interested in the judgment heretofore entered in this case, and that the original publication notice has been lost or destroyed, without the fault or neglect of said Matson, and that it cannot be supplied by a duly certified copy thereof, and that loss or damage may result to him unless supplied, or the "substance of the publication notice so lost or destroyed" be entered in the records in accordance with the statutes in such case made and provided.

Said justice of the peace also found what the substance of the original publication notice, so lost or destroyed, was. This restored, or amended record, leaving out the matters about which there is no controversy, shows "due notice of the application and time set for hearing thereof" to appellant and her husband in said cause before said justice of the peace, demanding judgment for $49 and costs, and that the writ of attachment had been issued and levied, and that the cause was set for trial on December 11, 1903, at 1 o'clock p. m., at the office of said justice of the peace in North

Chicago, in said county and state. The amended return of the constable shows publication of the notice by posting, according to the Illinois statutes.

It is contended by appellant that the original judgment before the justice of the peace in Chicago, and the attachment proceedings resulting in the sale of said piano

1.   and stool, were void, and that, such being the case, no amendment could vitalize the proceeding so as to devest appellant of her title to the property in question.

It is also contended by appellant that the law of the State of Illinois, permitting amendments to records and papers, and restoring lost records, does not apply to courts of justices of the peace.

On behalf of appellee, it is contended that due notice under the law of Illinois was given, and that the proceedings in attachment were regular, but that the notice was lost or destroyed, and the return on the notice by the constable was not made according to the facts which existed at the time of the original trial; that the amendments, which were permitted by the justice of the peace, did not alter the record as to what actually occurred, but simply made it speak the truth as to what occurred in the proceedings in attachment. If the original proceedings were not void, but only voidable, and the amendments to the notice and the constable's return and the record of the justice of the peace were authorized by law, then the records in the attachment suit were properly admitted in evidence, and the trial court did not commit error by their admission.

Judgments rendered by courts in other states, when such courts have jurisdiction over the subject-matter and parties,

are conclusive on the merits in all other states until

2.   they are vacated or set aside by some appropriate proceeding in the state where the judgments were rendered. *American Mut. Life Ins. Co.* v. *Mason* (1902), 159 Ind. 15. Where a judgment is rendered by a justice of the

peace of another state, and it is relied on as a defense,
3.    the facts necessary to show jurisdiction must be
proved by the party pleading the judgment. *Louisville, etc., R. Co.* v. *Parish* (1893), 6 Ind. App. 89; *Draggoo* v. *Graham* (1857), 9 Ind. 212; *Toledo, etc., R. Co.* v. *McNulty* (1870), 34 Ind. 531; *Cone* v. *Cotton* (1827), 2 Blackf. 82.

A justice of the peace in Illinois has jurisdiction in cases of implied contract where the amount does not exceed $200,
and in cases in attachment where the sum sought to be
4.    recovered does not exceed said amount, and the
plaintiff in an attachment proceeding may designate persons to be summoned as garnishees. An attachment proceeding may be begun directly in the first instance as an independent action. Judicial power is vested in the "supreme court, circuit courts, county courts, justice of the peace, police magistrates, and in such courts as may be created by law." Starr & Curtis's Illinois Statutes (1896), Article 6, §1.

The justice of the peace had jurisdiction of the subject-matter of the litigation, and of the person of the appellant for the purposes of the attachment suit, if the notice was sufficient.

The Illinois statutes make full provision for publication of notice by posting, for amending returns of officers and
records of the courts, and for restoring lost records,
5.    and give to the amended or restored records the same
effect as they would have had if no amendment had been required, or restoration found necessary. Starr & Curtis's Illinois Statutes (1896), Chap. 7, ¶¶2, 4, 9; Chap. 11, ¶¶51, 54; Chap. 116, ¶¶1, 2.

Appellant contends that we can only look to the notice found among the files, showing that the trial was to be held on December 11, 1904, at 125 Clark street, in the town of South Chicago, which was not within the jurisdiction of the justice, and upon an impossible date under the statute,

which required a notice of not less than five, nor more than thirty days.

Briefly summarized, the following had taken place in the amendment of the justice's record: (1) Permission to the constable to amend his return to the publication notices in the action; (2) the finding of the court that the original publication notice had been lost or destroyed, and what its contents were; (3) permission to the constable to amend his return to the publication notice and the actual amending thereof, and the filing of his amended return. For some reason the constable was given permission to amend his return, both before and after the finding of the justice as to the contents of the lost notice.

That the sale devested the title of appellant is not questioned, if the judgment of the justice was valid. After the sale the purchaser transferred the property to appellee. The questions to be determined, therefore, are whether the amendments of the return of the officer and the restoration of the record were authorized by the laws of the State of Illinois, and if so, whether such authority has in fact been exercised in the manner provided by law.

Chap. 116, ¶1, *supra*, provides "that whenever the record of any judgment or decree, or other proceeding, of any judicial court of this state, or any part * * * shall have been or shall hereafter be lost or destroyed," etc. Then follows the provision for amending defective and restoring lost records.

The statutes heretofore cited settle the question that courts of justices of the peace in Illinois are "judicial courts." Their functions are judicial, and not ministerial, and there seems to be no room for serious dispute upon the proposition. Being a "judicial court," the statutes conferred power upon the justice to permit amendments and to restore lost records. As supporting this conclusion, see *Ledford* v. *Weber* (1880), 7 Ill. App. 87; *Major* v. *People, ex rel.* (1891), 40 Ill. App. 323.

The purpose of the statute is not to validate a void judgment, for this can not be done. The justice had jurisdiction of the subject-matter and of the persons of the defendants for the purposes of the attachment suit, granting that the notice was sufficient.

The statute provides that the restoring order, when entered of record, ''shall have the same effect as if it had not been lost or destroyed.''

Process really void cannot be amended to make it valid. The whole theory of the statute and the proceedings to amend the return and record in the attachment suit is that the notice found to have been lost was before the court on the day of judgment, and its contents were as shown by the restoring order, and that a separate copy was mailed to each defendant at the address named in the affidavit.

The facts have always been the same, and the amendment simply made the record speak the truth, and did not put into it any new statement or fact, but only such as should have appeared on the day the judgment was rendered.

In *Dunn* v. *Rodgers* (1867), 43 Ill. 260, this proposition is clearly stated as follows: ''The indorsement made by the sheriff is not the service, but only affords evidence of the fact. Where the sheriff amends his return, he by no means changes the fact, but simply the evidence. He makes the return and the amendment on his responsibility and at his peril. If false, as amended, he is liable to an action for a false return. There was, therefore, no error in the return, as amended, upon which the decree sought to be reversed by this bill was based. When the amendment was made, the error was removed and could not be urged under the bill of review.'' See, also *Spellmyer* v. *Gaff* (1884), 112 Ill. 29, 34, 1 N. E. 170; *Hinkle* v. *City of Mattoon* (1897), 170 Ill. 316, 48 N. E. 908; *Smith* v. *Clinton Bridge Co.* (1883), 13 Ill. App. 572; *Hogue* v. *Corbit* (1895), 156 Ill. 540, 41 N. E. 219, 47 Am. St. 232.

Appellant argues that justices of the peace in Illinois do

not have the power to amend their records, and cites, in support of that contention, the case of *St. Louis, etc., R. Co.* v. *Gundlach* (1896), 69 Ill. App. 192.

In that case the justice rendered judgment on October 19, and after it was duly entered and signed, on October 25, at the request of the attorney desiring to appeal, changed the date of entry of judgment to October 24, and on October 26, when an appeal bond was tendered, refused to approve it, having reconsidered his act and changed his entry, leaving it as originally made. The court held that the justice had no right to change the date of his judgment. On the facts of that case the decision was doubtless right. This was changing the fact, not furnishing evidence by the record to show a fact already known to exist. While there may seem to be some conflict between that case and the conclusion reached in the one at bar, we think the conflict is only apparent and not real. Furthermore, no reference is made in the case to any statute on the subject.

The case may readily be distinguished from the line of authorities in the same state holding that amendments may be made, some of which are cited in this opinion. The 6. question is raised as to what is included in the record of the court subject to amendment or restoration. Does it include the notice and the return thereon?

The case of *Vail* v. *Iglehart* (1873), 69 Ill. 332, 334, had reference to this particular statute, but the question arose in a court of general jurisdiction. In that case, the court said: "What, then, is the meaning of the words 'record of any judgment,' as they are used in this act? It seems to be argued by appellee as if their meaning is, in his opinion, to be limited to the final entering of the judgment of the court by the clerk in the proper record. This, to our apprehension, is entirely too narrow a construction to accomplish the purposes of the act, nor do we understand that such is the plain and obvious import of the words used. The record of a judgment, at common law, was known as 'the judgment

roll,' and this included, as well, the pleadings, process, etc., as 'signing judgment.' Stephen, Pleading [9th Am. ed.] *24 *et seq.;* Freeman, Judgments §75. Under our practice, while the pleadings, process, etc., are not, as at common law, required to be copied on a parchment roll, nor in the record book in which final judgment is entered, they are required to be filed in the office of the clerk; and, when a copy of the record of the judgment is required, for the purpose of bringing the case by appeal or writ of error into this court, or bringing suit upon it in another state, or as evidence under an issue of *nul tiel* record, or to establish a former adjudication of the same subject-matter between the same parties, and, indeed, in all cases where it is essential to have a complete record of a judgment, the pleadings and process are an indispensable part of it.''

We therefore conclude that the publication notice was a part of the record of the judgment, and subject to amendment or restoration under the statute. We come then

5.  to the second phase of this question: Was this judicial power exercised in the manner provided by law? The principal objection raised relates to the notice. The statute provides for service of notice in the same manner as service in chancery suits. The record does not disclose the manner of service of such notices in chancery proceedings in the State of Illinois. Chap. 116, ¶2, *supra,* on this subject of notice, states: ''And due notice of said application shall be given, as in chancery cases.'' Further on in the same section we find the following: ''The record, in all cases where the proceeding was *in rem,* and no personal service was had, may be supplied upon like notice, as nearly as may be, as in the original proceeding. The court in which the application is pending may, in all cases in which publication is required, direct, by order or orders, to be entered of record, the form of the notice, and designate the newspaper or newspapers in which the same shall be published.''

Thus it appears that provision is made for notice (1) ''as

in chancery cases,'' where personal service is obtained, and
(2) ''where the proceeding was *in rem*,'' and notice by pub-
lication, the court by order directs such notice ''as in the
original proceeding.''

The record shows that such notice was given on the order
of the justice of the peace, and that publication was by post-
ing as in the original suit, and by mailing ''to each of the
within-named defendants a copy thereof at the place of resi-
dence named in the attachment affidavit, this 20th day of
October, 1907.''

In addition to this the record shows the actual service of
notice upon defendants, who at this time were in the city of
Chicago. We do not think this aids appellee, as no provision
therefor is found in the statute, but it was a matter of fair-
ness between the parties.

The record does not show publication in any newspaper,
but as the attachment statute authorized the publication by
posting, and by mailing where the address was stated in
the affidavit, we conclude that the notice was given ''as
nearly as may be, as in the original proceeding'' and that it
was sufficient to authorize the amendment and restoration of
the record as prayed for in the application, and as actually
made.

Other questions are discussed by counsel, which, in view of
the conclusions already announced, cannot enter largely into
the decision of this case.

Was the proceeding in the Steuben Circuit Court a collat-
eral attack upon the judgment of the Illinois justice of the
peace? We hold that it was. 17 Am. and Eng. Ency.
Law (2d ed.) 848. However, our conclusion that the
amendments to the records were authorized and made
according to the provisions of the statutes is the basis of this
opinion.

What is the effect of the recitals in the record of the justice
showing due notice to defendants? Granting that the attack
is collateral, the authorities in Illinois support the proposi-

tion that such recitals are conclusive upon the parties. *Reddish* v. *Shaw* (1903), 111 Ill. App. 337; *Payne* v. *Taylor* (1890), 34 Ill. App. 491; *Arnold* v. *Mangan* (1899), 89 Ill. App. 327; *Reedy* v. *Canfield* (1896), 159 Ill. 254, 260; *Barnett* v. *Wolf* (1873), 70 Ill. 76; *Matthews* v. *Hoff* (1885), 113 Ill. 90; *Illinois Cent. R. Co.* v. *People, ex rel.* (1901), 189 Ill. 119, 59 N. E. 609.

The admission of the letter in evidence, shown at specification fifty-seven of the motion for a new trial, may have been error, but it was harmless error. If it was ad-

8. mitted to show notice, having found the notice as amended and restored to be sufficient, no harm could result.

If admitted on any other theory, we are unable to find that the rights of appellant were in any way affected by its admission.

The question is raised that, in the absence of a showing to the contrary, the common law must be held to prevail in a sister state, and that the title to the property in question was therefore in the husband of the appellant, and she must fail because of the weakness of her own title.

Right of possession will sustain an action in replevin; and, furthermore, appellee's title, if any, comes indirectly from appellant, and we are not impressed with the correct-

9. ness of appellee's contention on this proposition, as applied to the facts in this case.

The gist of all objections to the evidence that can possibly avail appellant relates to the alleged invalidity of the judgment of the justice and the proceedings amending and restoring parts thereof.

The conclusions reached show that the motion for a new trial was properly overruled, and the judgment is therefore affirmed.